#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALICE J., | ) |
| | ) |
|        **Plaintiff,** | ) |
| | ) |
| vs. | )     Case No. 19-CV-137-JFJ |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|        **Defendant.** | ) |

### OPINION AND ORDER

Plaintiff Alice J. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claims for disability benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.**      **General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established

by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.  Procedural History and the ALJ's Decision

Plaintiff, then a 44-year-old female, protectively applied for Title II and XVI disability insurance benefits on August 24, 2015, alleging a disability onset date of January 1, 2013. R. 12, 276-288. Plaintiff's claims for benefits were denied initially on September 30, 2015, and on reconsideration on February 22, 2016. R. 103-153. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted an initial hearing on March 21, 2017. R. 71-102. ALJ Belcher decided further record development was necessary. Plaintiff's case was reassigned and a new ALJ held a supplemental hearing on December 5, 2017. R. 40-70. The ALJ issued a decision on January 25, 2018, denying benefits and finding Plaintiff not disabled because she was able to perform both her past relevant work as a housekeeper, and in the alternative, other work existing

in the national economy. R. 30-32. The Appeals Council denied review, and Plaintiff appealed. R. 1-5; ECF No. 2.

The ALJ found that Plaintiff met the insured status requirements for Title II benefits through March 31, 2013, and had not engaged in substantial gainful activity since the alleged onset date of January 1, 2013. R. 14. At step two, the ALJ found that Plaintiff had the severe impairments of carpal tunnel syndrome, mild; major depressive disorder (MDD); generalized anxiety disorder (GAD); chronic headache syndrome; pulmonary nodules; and degenerative disc disease, mild. R. 15. He additionally found that Plaintiff had non-severe impairments of pancreatitis, chronic kidney disease, and psoriasis. R. 15-16. He found Plaintiff's "reported history" of fibromyalgia was not medically determinable. R. 16. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 17. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had moderate limitation in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and no limitation in the area of adapting or managing oneself. R. 17-18.

After evaluating the objective and opinion evidence, Plaintiff's statements, and Plaintiff's mother's third-party statement, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work as follows:

> The claimant can lift no more than twenty pounds occasionally and ten pounds frequently. The claimant can sit, stand and walk six hours out of an eight-hour day. The claimant cannot climb ladders, ropes or scaffolds. The claimant can occasionally climb ramps and stairs, balance, bend, stoop, kneel, crouch or crawl. The claimant is limited to simple, repetitive and routine tasks. The claimant can have occasional contact with coworkers and supervisors and cursory superficial contact with the general public. The claimant is limited to no more than normal level exposure to gases, fumes, dust, poor ventilation, odors or pulmonary irritants. Normal is defined as the level normally in an office commercial setting.

R. 18. Based on the testimony of a vocational expert ("VE") at step four, the ALJ found Plaintiff capable of performing her past relevant work as a housekeeper, (light, unskilled, SVP 2). R. 30. As an alternative finding, the ALJ found at step five that Plaintiff could perform other unskilled light work, such as Small Product Assembler, Conveyor Line Bakery Worker, and Document Specialist. R. 31-32. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 32. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

### III.   Issue

Plaintiff raises one allegation of error on appeal: that the ALJ's RFC is not supported by substantial evidence, because the ALJ found mild carpal tunnel syndrome as a severe impairment at step two but failed to include any associated manipulative limitations in the RFC or explain the omission. ECF No. 18 at 1.

### IV.   Analysis – RFC Is Supported by Substantial Evidence

Plaintiff argues that, in determining the RFC, the ALJ improperly failed to include any manipulative limitations based on Plaintiff's severe impairment of mild carpal tunnel syndrome. In support, Plaintiff cites her own testimony and the opinion of consultative examiner Srikanth Reddy, M.D., indicating that Plaintiff "could only occasionally perform manipulative activities." ECF No. 18 at 9 (*see* R. 924).

The Court finds the ALJ's RFC is supported by substantial evidence and free of legal error. The ALJ thoroughly discussed Plaintiff's occasional hand complaints, which began in January 2016, with numbness and tingling in her hands. R. 23, 869. On June 7, 2016, Plaintiff reported to her treating neurologist, Jerome Wade, M.D., that she suffered "numbness and tingling in her

hands and feet" that was ongoing for three years, yet "did not prevent her from doing any activity and lasted only twenty minutes" despite taking no medications for it. R. 24, 890. Dr. Wade prescribed Gabapentin and Plaintiff returned in July, reporting improvement in the numbness and tingling. R. 889. Plaintiff saw other providers and did not report problems with her hands. R. 24, 836, 839, 842, 845, 855, 861, 867. The record does not show mention of Plaintiff's complaint of her hands again until September 2017, when Plaintiff informed her primary care provider that "during testing for disability she had nerve conduction testing and [was] found to have bilateral carpal tunnel syndrome." R. 986. Plaintiff complained during that visit that "her neuropathy gets worse during the middle of the day," so her medication was increased and she was advised to use wrist splints, which were not noted at her next medical visit. *See* R. 28, 987, 1011.

The ALJ also expressly and properly weighed the medical opinion evidence, giving "little weight" to Dr. Reddy's opinion limiting Plaintiff's use of the right and left hand to occasional reaching, handling, fingering, feeling, pushing, or pulling. R. 27. The ALJ found Dr. Reddy's manipulative limitations "inconsistent with the great weight of the evidence." R. 29. Contrary to Plaintiff's argument, the ALJ did discuss the electromyography (EMG) study performed by Dr. Reddy during Plaintiff's consultative exam. The ALJ stated:

> Dr. Reddy performed an electromyograph (EMG which revealed bilateral 'mild' median nerve entrapment at the wrist, or carpal tunnel syndrome (Exhibit 29F, page 4). Dr. Reddy noted no Thenar Muscle Atrophy or sensory loss in the first three fingers (Exhibit 29F, page 13). Dr. Reddy otherwise noted some decreased range of motion of the claimant's back and neck but otherwise full range of motion of all other joints (Exhibit 29F, pages 11-13).

R. 27 (citing R. 923, 930-932). Further, under the "Use of Hands" section of Dr. Reddy's opinion, Dr. Reddy assessed Plaintiff's ability as only "occasionally" bilaterally, noting "same" as the reasoning. R. 926. Looking back in Dr. Reddy's opinion, the first mention of any supporting medical condition is "low back pain," not anything relating to Plaintiff's carpal tunnel diagnosis.

6

*See* R. 924.  Thus, the ALJ reasonably concluded Dr. Reddy's opinion was not consistent with the evidence as a whole, and an ALJ may accord less weight to an opinion that is inconsistent with the record as a whole.  *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (an ALJ must consider whether an opinion is consistent with the record as a whole); *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinion which was inconsistent with other medical evidence).

The ALJ also considered and discussed the findings of Harold Z. Delaughter, who performed a second consultative examination on June 12, 2017.  R. 27; R. 903-13.  Similar to Dr. Reddy's findings, Dr. Delaughter found bilateral carpal tunnel syndrome, but normal grip strength bilaterally with no Thenar Muscle Atrophy or sensory loss in the first three fingers.  *See* R. 904, 907.  In assessing functional limitations, the ALJ noted that Dr. Delaughter found no limitations in the use of her hands and feet.  R. 29.  Although the ALJ gave little weight to Dr. Delaughter's walking limitations, R. 29, the ALJ's conclusion regarding the lack of manipulative limitations flowing from carpel tunnel syndrome is supported by Dr. Delaughter's findings.  R. 29 (citing R. 905-907, 910).  In sum, the ALJ adequately summarized medical evidence related to Plaintiff's hands, properly weighed the relevant medical opinions of the consultative examiners, and explained his reasons for rejecting Dr. Reddy's limitations.  Therefore, the Court finds no legal error in his narrative discussion.  *See Hendron v. Colvin*, 767 F.3d 951, 954-56 (10th Cir. 2014 (rejecting claimant's argument that the RFC was not supported by an adequate narrative discussion, where the ALJ thoroughly described the medical evidence and described the claimant's reports of her abilities); *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (upholding an ALJ's symptom evaluation where, despite the claimant's reports of pain, he demonstrated a satisfactory range of motion for the joints in question); *Megginson v. Astrue*, 489 F. App'x 260, 263 (10th Cir.

2012) (unpublished) (the fact that clinical examinations routinely showed full 5/5 muscle strength, grip strength, and range of motion in his right arm undermined the claimant's allegations).

Further, considering the record as a whole, the ALJ's decision to omit a manipulative limitation is supported by substantial evidence, *i.e.*, relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Specifically, it is supported by the fact that Plaintiff's carpal tunnel syndrome, mild did not require surgical correction (*see* R. 17, 987), that Plaintiff continued to seek employment as a housekeeper during the relevant period (*see* R. 21), and by consistent normal objective joint findings upon physical examination (*see* R.22-23, 24, 25, 26, 27, 28, 30). Even after Plaintiff first complained of hand numbness and tingling in June of 2016, she noted that it did not prevent her from performing any activities, only lasted 20 minutes, and it improved with medication. *See, e.g.,* R. 24, 859, 860, 861.

Plaintiff's cited cases are distinguishable. Such cases stand for the legal principle that "[a]n explanation should be provided when an impairment found to be severe at step two is determined to be insignificant at later stages of the proceedings." *Clayburn v. Colvin*, No. CIV-11-429-SPS, 2013 WL 1336484, at *2 (Mar. 29, 2013 (citing *Timmons v. Barnhart*, 118 Fed. App'x. 349, 353 (10th Cir.2004)). In *Clayburn*, the court reversed because the ALJ found a severe impairment of carpal tunnel syndrome in step two but failed to "explain why the claimant's bilateral carpal tunnel syndrome did not call for a corresponding physical limitation in the RFC." *Id.* The ALJ also ignored evidence that was inconsistent with his conclusion, including that a "band release procedure was recommended to treat the claimant's bilateral carpal tunnel syndrome." *Id. See also Flores v. Astrue*, No. 11-CV-343-FHM, 2012 WL 4325639, at *3 (N.D. Okla. Sept. 20, 2012) (reversing where, *inter alia*, ALJ found carpal tunnel to be severe at step two but failed to "explain why no such limitations were included in the RFC"). In contrast, the ALJ in this case adequately

explained his reasons for finding "carpal tunnel syndrome – mild" to be severe at step two but failing to impose nonexertional limits related to that impairment.  Specifically, the ALJ noted the consistent normal physical findings in Plaintiff's joints and muscles, the inconsistencies between Plaintiff's testimony and reports to various physicians, and the stark inconsistency between the two consultative examinations, only one week apart, regarding Plaintiff's use of her hands.  Therefore, the cases relied on by Plaintiff do not support a reversal in this case.[1]

## V. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 7th day of July, 2020.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

[1] Because the Court finds the RFC to be supported by substantial evidence, the Court rejects Plaintiff's additional argument that the ALJ should have included additional manipulative limitations in the hypothetical to the VE.  ECF No. 18 at 14-15.